IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| **KALLI SAVELL**, as Personal Representative on behalf of the Estate of **EZEKIEL SAVELL**, and individually as the surviving mother of **EZEKIEL SAVELL** <br> *Plaintiff,* <br><br> v. <br><br> **GALVESTON POLICE DEPARTMENT; CITY OF GALVESTON; OFFICER BRYAN PHAM** <br> *Defendants.* | **CIVIL ACTION NO:** <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff KALLI SAVELL, on behalf of the estate of her deceased son, EZEKIEL SAVELL, and on behalf of herself as the surviving mother of EZEKIEL SAVELL (collectively "Plaintiffs"), by and through their attorneys, bring this action for damages and other legal and equitable relief from Defendants GALVESTON POLICE DEPARTMENT, CITY OF GALVESTON, OFFICER BRYAN PHAM (collectively "Defendants"), for violations of rights under the United States Constitution actionable under 42 U.S.C. § 1983, and any other cause(s) of action that can be inferred from the facts set forth herein.

**INTRODUCTION**

1. This civil rights action arises from the March 2, 2024, police shooting death of 31-year-old Ezekiel Savell at his Galveston residence following a 911 call for help during a mental health crisis. Plaintiff, individually and on behalf of her deceased son, Ezekiel Savell, seeks redress

1

against Defendants for the use of deadly force that unlawfully killed Mr. Savell under the color of law and in violation of his rights under the Fourth and Fourteenth Amendments of the United States Constitution.

2. Plaintiff further alleges that the totality of the circumstances demonstrates that Officer Pham's conduct leading up to and precipitating the shooting, was not objectively reasonable, including their disregard of Mr. Savell's mental health crisis and of an agreed containment plan.

3. In light of the Supreme Court's May 15, 2025, decision in *Barnes v. Felix*, which rejected the Fifth Circuit's "moment of threat" doctrine and requires courts to evaluate all relevant facts and events leading up to a use of force, Plaintiff alleges that Defendants' conduct violated clearly established Fourth Amendment principles under the totality of the circumstances.

4. The City of Gaveston's ("the City") unconstitutional, unlawful customs and official policies regarding the use of deadly force were the moving force behind Mr. Savell's injuries and his wrongful death at the hands of officers.

5. As a result of Defendants' unlawful actions, Mrs. Savell, individually as the mother of Mr. Savell and as the personal representative of Mr. Savell's estate, is entitled to recover damages pursuant to violations of rights under the United States Constitution, including (I) protections against deadly excessive force under the Fourth Amendment, (II) protections against the deliberate indifference to serious medical needs under the Fourteenth Amendment, (III) municipal liability for unlawful customs or practices that authorized the Officer Pham's use of deadly excessive force against Mr. Savell, (IV) municipal liability for facially unconstitutional policies that authorized Officer Pham's use of deadly excessive force against Mr. Savell, and for (V) wrongful death. All causes of action are actionable under 42 U.S.C. § 1983.

## PARTIES

6. Kalli Savell is and has been, at all relevant times, a citizen of the United States of America. Mrs. Savell sues on behalf of herself as the wrongful death beneficiary of her son, Ezekiel Savell, and sues on behalf of Ezekiel Savell as the personal representative and administrator of the Estate of Ezekiel Savell.

7. Defendant City of Galveston, Texas, is a local governing municipality entity in Galveston County, Texas, which funds and operates the Galveston Police Department and employs its officers. The City of Galveston is within the Southern District of Texas.

8. Officer Pham is a law enforcement officer with the Galveston Department and is an employee of the City of Galveston. On information and belief, at all relevant times, Officer Pham acted under the color of law as a law enforcement officer on behalf of the City of Galveston. Officer Pham is sued in his individual, personal capacity only for compensatory and punitive damages.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to (i) 23 U.S.C.A § 1331, which confers original jurisdiction upon this Court for actions arising under the law of the United States; (ii) 28 U.S.C. A. § 1343(a)(3) which conferred original jurisdiction upon this Court in any civil action to redress the deprivation, under the color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; (iii) 28 U.S.C.A. § 1343(a)(4), which confers original jurisdiction upon this Court in any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights a civil action to recover damages or to secure equitable;

and (iv) under the Declaratory Judgment Act, 28 U.S.C. § 2201; 42 U.S.C. §§ 2000e *et seq.*, as amended.

10. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events or omissions giving rise to this cause of action took place within the Southern District of Texas.

**FACTUAL BACKGROUND**

11. On the morning of March 2, 2024, Mr. Ezekiel Savell awoke to a man outside his balcony trimming trees. For most, this would not have been an inherently disturbing sight. But, unlike most people, Mr. Savell had schizophrenia.

12. Because of his schizophrenia, Mr. Savell's property manager had routinely taken steps to make sure that Mr. Savell was not caused great distress by usual and mundane occurrences at his residence. One such step is that, before a service worker came to the property Mr. Savell rented, Mr. Savell's property manager, Brian Becker, would let him and his family know in advance that a service worker would be coming t. This routine practice allowed Mr. Savell to live stress-free and harmoniously with his schizophrenia diagnosis.

13. But, on the morning of March 2, 2024, unbeknownst to both Mr. Savell and his property manager, the tree trimmer service came unannounced (on information and belief the tree trimmer was scheduled for the following day but came a day early). Because the tree trimmer came unexpectedly, Mr. Savell's property manager, Mr. Becker, had not been able to inform Mr. Savell and his family of their presence, as he had done many times before.

14. Upon seeing men outside his balcony, Mr. Savell became distressed. As a result of this distress, Mr. Savell went outside and brandished a blade. On information and belief, Mr. Savell then approached one of the men trimming trees and struck him on the head. On information and

4

belief, Mr. Savell struck the man with only the hilt of the blade, which resulted in a localized bruise or abrasion mere millimeters in size.

15. Mr. Becker called 911 and requested help with the *mental health crisis* Mr. Savell was experiencing. Mr. Becker explained to the 911 dispatcher that Mr. Savell had a mental illness and had brandished a knife toward a landscaper who had startled him, and thus triggered him, by operating a chainsaw outside Ms. Savell's window.

16. By the time officers responded to Mr. Becker's call, the situation had de-escalated. Mr. Savell had retreated into his home on the second floor of the building. The landscapers who had been on the property had moved across the street, and the one who sustained the minor head injury was being attended to by paramedics.

17. The Body-Worn Camera ("BWC") footage from the Galveston Police Department officers who responded to the call confirms that, from the time the first officer, Officer Hendrick, arrived on the scene, all responding officers were informed of and aware that this incident was related to a known, preexisting mental health condition. The property manager mentioned Mr. Savell's schizophrenia to dispatch when he first called and again to the officers when they arrived, and the BWC footage shows the officers discussing the mental health crisis that Mr. Savell was experiencing.

18. The officers agreed on a plan to contain Mr. Savell in his upstairs apartment until help could arrive in the form of backup, mental health support, and/or Mr. Savell's mother, who was already en route to the scene. According to the plan that the Galveston Police Department officers discussed and agreed upon, Officer Hendrick would monitor the front of the building, and Officer Pham would monitor the alley behind the building (which contained the stairs leading to the only entrance/exit door to Mr. Savell's apartment) while they waited for the mental health crisis to be

5

resolved.

19. At the time that the officers formed this appropriate containment plan, the situation was fully de-escalated, and there was little risk of re-escalation or threat of danger to anyone. Mr. Savell had no weapons other than knives, and he was contained in his second-floor apartment home. The only exit from that apartment was a door on a landing up a flight of stairs, approximately 10 yards away from any exit from the alleyway. Mr. Savell could be heard yelling occasionally on the BWC, but he was not going anywhere. Indeed, as the property manager knew, due to his severe mental health issues, Mr. Savell virtually never left the apartment, the only place he felt safe.

20. The natural spot from which Officer Pham could monitor the back door while the officers waited for help was where the alley between the house and the house next door met the back alleyway, approximately 10 yards from the stairs, landing, and back door, and maintaining a line of sight and line of movement to the front yard. This is where Officer Pham momentarily positioned himself, in accordance with the agreed containment plan, before making the unreasonable unilateral decision to provoke a confrontation. Rather than waiting, as was appropriate in the circumstances and agreed to by the officers, the BWC shows that Officer Pham approached, climbed the stairs, drew his firearm, pointed it at the back door behind which Mr. Savell was standing, and began screaming at Mr. Savell to come out immediately.

21. With Officer Pham climbing the stairway, pointing his gun at him, and screaming, in his crisis, Mr. Savell made the fateful decision to charge out of his door toward Officer Pham, brandishing a knife. Officer Pham shot Mr. Savell six times, killing him.

22. Officer Pham knew Mr. Savell was having a mental health crisis, had retreated into his apartment for some time, had never pursued the landscaper, and was not an imminent threat of danger to anyone. The situation only re-escalated because of Officer Pham's recklessness.

6

23. While under the now-rejected prior Fifth Circuit precedent it was at least arguable that Officer Pham acted reasonably in the "moment of threat" while being charged with a weapon (though retreat or less-lethal weapons should have still been options), under the "totality of the circumstances" Officer Pham's decision to escalate the confrontation in reckless disregard for Mr. Savell's mental health crisis, sound police tactics, and the reasonable containment plan agreed to with his fellow officers created that dangerous moment of threat. Officer Pham's actions in trying to be a cowboy and provoking a confrontation were reckless, not objectively reasonable, and proximately caused Mr. Savell's death.

24. In light of this changed legal landscape, this was not a reasonable use of force. To the contrary, Officer Pham's unreasonable use of deadly force violated the Fourth and Fourteenth Amendments.

## CAUSES OF ACTION

### COUNT I
### DEADLY EXCESSIVE FORCE IN VIOLATION OF SECTION 1983 OF THE CIVIL RIGHTS ACT OF 1964
### (42 U.S.C § 1983)
### Officer Pham (in his Individual Capacity)

25. The allegations contained in the preceding paragraphs are incorporated by reference.

26. The conduct alleged herein deprived Plaintiffs, on behalf of Mr. Savell, of rights and privileges secured and protected by the United States Constitution and the laws of the United States, namely the Fourth Amendment right to be free from excessive force. The conduct violated Mr. Savell's clearly established constitutional rights and was not objectively reasonable under the totality of the circumstances.

27. In *Barnes v. Felix*, The Supreme Court unanimously agreed that lower courts have to look at the totality of the circumstances that lead to a police shooting and cannot artificially restrict their analysis to the "moment of threat." 605 U. S. ____ (2025).

28. It has been well established precedent that "[a] police officer's use of deadly force violates the Fourth Amendment when it is not 'objectively reasonable.'" *Graham v. Connor*, 490 U. S. 386, 397 (1989). And that inquiry into reasonableness requires assessing the "totality of the circumstances." *Id*., at 396 (quoting *Tennessee v. Garner*, 471 U. S. 1, 9 (1985)).

29. Mr. Savell was killed as a direct result of Officer Pham's use of force that was objectively unreasonable at each moment deadly force was used. The facts indicate that Mr. Savell presented no immediate threat of serious or significant harm to any person or any of the officers at each moment deadly force was used.

30. On information and belief, when Officer Pham shot Mr. Savell, he was up on a balcony landing while the officers were down on the ground. The officers were not in close physical proximity, which would warrant a perception of immediate threat of serious or significant harm. Mr. Savell was unarmed except for the knife he had previously drawn, which, at a distance of at least 10 feet away, would not elicit a response of open fire from officers.

31. On information and belief, at no time did Mr. Savell brandish a firearm or any other weapon that would have placed the officers or anyone else in immediate threat of serious or significant harm.

32. Officer Pham's conduct violated Mr. Savell's clearly established constitutional right to be free from excessive force without an immediate threat of serious or significant harm at each moment deadly force is used.

33. Officer Pham further acted with evil motive or intent and/or reckless and callous indifference to Mr. Savell's Fourth Amendment rights, entitling Plaintiffs to punitive damages.

34. Plaintiffs' requests for relief are set forth below.

## COUNT II
## FAILURE TO PROVIDE MEDICAL CARE AND TREATMENT IN VIOLATION OF SECTION 1983 OF THE CIVIL RIGHTS ACT OF 1964
## (42 U.S.C § 1983)
**Officer Pham (in his Individual Capacity)**

35. The allegations contained in the preceding paragraphs are incorporated by reference.

36. The Due Process Clause of the Fourteenth Amendment requires the responsible government or governmental agency to provide medical care to persons who have been injured while being apprehended by the police. *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983).

37. The conduct alleged herein deprived Plaintiffs, on behalf of Mr. Savell, of rights and privileges secured and protected by the United States Constitution and the laws of the United States, namely the Fourteenth Amendment protections against officers denying treatment for serious medical needs through deliberate indifference.

38. The injuries Mr. Savell sustained as a result of Officer Pham's actions, six gunshot wounds, were a serious medical need. That is, his injuries were "one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006).

39. Officer Pham knew of and disregarded an excessive risk to Mr. Savell's health and safety.

40. Officer Pham denied or delayed medical treatment despite having knowledge of a substantial risk to Mr. Savell's health and safety.

41. Officer Pham's denial or delay of medical treatment resulted in substantial harm to Mr. Savell, as he died from the gunshot wounds he sustained from Officer Pham.

42. This conduct violated Mr. Savell's clearly established constitutional rights and was not objectively reasonable under the circumstances.

43. Plaintiffs' requests for relief are set forth below.

## COUNT III
## MUNICIPAL LIABILITY – UNCONSTITUTIONAL CUSTOM OR PRACTICE IN VIOLATION OF SECTION 1983 OF THE CIVIL RIGHTS ACT OF 1964
## (42 U.S.C § 1983)

**City of Galveston**

44. The allegations contained in the preceding paragraphs are incorporated by reference.

45. The conduct alleged herein deprived Plaintiffs, on behalf of Mr. Savell, of rights and privileges secured and protected by the United States Constitution and the laws of the United States, namely the Fourth Amendment right to be free from excessive use of force.

46. On information and belief, The City had a custom or practice of allowing Galveston Police Department officers to use excessive force against persons of color who posed no immediate threat of serious or significant harm.

47. On information and belief, The City's official policymakers approved, ratified, and promulgated this custom or practice.

48. An official policy can be established in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy. *See Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)). In this context, "[a] customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010).

49. The widespread custom or practice allowed by the City significantly increased the likelihood that Galveston Police Department officers would continue to use excessive force against persons of color who posed no threat of serious and immediate harm and, therefore, led Defendant Pham to act accordingly when he killed Mr. Savell, a person of color, posing no immediate threat.

50. As a result, the City's custom or practice of allowing Galveston Police Department officers to use excessive force against persons of color who posed no immediate threat of serious or significant harm was the moving force behind Mr. Savell's wrongful death.

51. Plaintiffs' requests for relief are set forth below.

## COUNT IV
## MUNICIPAL LIABILITY – UNCONSTITUTIONAL OFFICIAL POLICIES IN VIOLATION OF SECTION 1983 OF THE CIVIL RIGHTS ACT OF 1964
## (42 U.S.C § 1983)

**City of Galveston**

52. The allegations contained in the preceding paragraphs are incorporated by reference.

53. The conduct alleged herein deprived Plaintiffs, on behalf of Mr. Savell, of rights and privileges secured and protected by the United States Constitution and the laws of the United States, namely the Fourth Amendment right to be free from excessive use of force.

54. The City's official policymaker in law enforcement created and promulgated the City's official deadly force applications policy, Policy 300.4 of the Galveston Police Department Policy Manual.

55. Policy 300.4 of the Galveston Police Department Policy Manual authorizes and enables the City's officers to execute any person that the officer reasonably believes is an imminent threat of death or serious bodily injury, even if the suspect is not at that very moment point a weapon at someone. Officers are also permitted to kill suspects if the officer reasonably believes that the individual has a weapon or is attempting to access one and intends to use it against the officer or another person, and imminent danger may also exist if the individual is capable of causing serious bodily injury or death without a weapon and the officer believes the individual intends to do so.

56. It is settled law that "[a] police officer's use of deadly force violates the Fourth Amendment when it is not 'objectively reasonable.'" *Graham v. Connor*, 490 U. S. 386, 397 (1989). And that

11

inquiry into reasonableness requires assessing the "totality of the circumstances." *Id*., at 396 (quoting *Tennessee v. Garner*, 471 U. S. at 9 (1985)).

57. The City's deadly force policy does not coincide with the objective reasonableness standard the Supreme Court has upheld and does not require officers to assess the totality of the circumstances when determining if deadly force is acceptable.

58. Therefore, the City's written deadly force applications policy directs and authorizes its officers to engage in unconstitutional conduct through the excessive use of deadly force. A municipality is liable under § 1983 if a written policy directs or authorizes the deprivation of constitutional rights.

59. The City's officers, including Officer Pham, are required and trained to follow the City Defendant's written deadly force applications policy in law enforcement operations.

60. Defendant Pham thus acted according to the City's unconstitutional written policy when he shot and killed Mr. Savell, despite Mr. Savell posing no immediate threat of serious or significant harm when the deadly force was utilized.

61. As a result, the City's written deadly force applications policy was a moving force behind the deprivation of Mr. Savell's constitutional rights and his eventual death.

62. Plaintiffs' requests for relief are set forth below.

**COUNT VI**
**WRONGFUL DEATH IN VIOLATION OF SECTION 1983 OF THE CIVIL RIGHTS ACT OF 1964**
**(42 U.S.C § 1983)**
**All Defendants**

63. The allegations contained in the preceding paragraphs are incorporated by reference.

64. Defendants' previously established violations of Ms. Savell's constitutional rights led to Mr. Savell's death due to Officer Pham's use of deadly excessive force and Officer Pham's failure to provide necessary medical treatment.

65. Defendants' constitutional violations more likely than not led to Mr. Savell's death.

66. Plaintiffs' requests for relief are set forth below.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury.

## REQUEST FOR RELIEF

Plaintiffs respectfully request judgment against Defendants as follows:

A. Declaring that the practices complained of herein are unlawful and in violation of the rights of Mr. Savell under the U.S. Const. and 42 U.S.C. § 1983;

B. Awarding all damages which Plaintiffs have sustained as a result of Defendants' conduct, including for physical injuries, medical bills, emotional distress, and anguish;

C. Pre-judgment and post-judgment interest, as provided by law;

D. Awarding Plaintiffs punitive damages in an amount commensurate with Defendants' ability and so as to deter future malicious, oppressive, and/or unlawful conduct;

E. Granting Plaintiffs reasonable and necessary attorneys' fees and expenses which Plaintiffs have incurred and will continue to incur during all trial and appellate court proceedings pursuant to 42 U.S.C. § 1988;

F. Awarding Plaintiff Kalli Savell, as the representative of the Estate of Mr. Savell, damages for conscious pain and mental anguish prior to Mr. Savell's death, funeral and burial expenses, and exemplary damages;

G. Awarding Plaintiff Kallie Savell, as the wrongful death beneficiary of Mr. Savell, damages for mental anguish, loss of companionship and society, and pecuniary loss;

H. That the Court retain jurisdiction over Defendants until such time as it is satisfied that they have remedied the practices complained of and are determined to be in full compliance

with the law; and

I. Awarding Plaintiffs such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

DATED: February 26, 2026

Respectfully Submitted,

*/s/ Holt Major Lackey*
Holt Major Lackey
Texas Bar No. 24047763
SDTX Fed. No. 620493
HOLT MAJOR LACKEY, PLLC
111 W. Anderson Ln., Ste. D-211
Austin, TX 78752
Telephone: (512) 949-9598
holt@holtmajorlackey.com
