UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| KALLI SAVELL, as Personal Representative on behalf of the Estate of EZEKIEL SAVELL, and individually as the surviving mother of EZEKIEL SAVELL, Plaintiff, | § § § § § § § | |
| v. | § § | Civil Action No. 3:26-cv-00060 |
| GALVESTON POLICE DEPARTMENT; CITY OF GALVESTON; OFFICER BRYAN PHAM, Defendants. | § § § § § § | |

## DEFENDANTS' MOTION TO DISMISS

Defendants City of Galveston, Texas[1], sued directly and indirectly through the Galveston police department, and Officer Bryan Pham, move the Court, through FED. R. CIV. P. 12(b)(6), to dismiss all claims asserted in Doc. No, 1, Plaintiff's Original Complaint and Demand for Jury trial.

---

[1] The City of Galveston's Police Department is a non-juridical entity which does not enjoy a separate legal existence from the City of Galveston and lacks the capacity to be sued. *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991).

176669196.2                                          i

TABLE OF CONTENTS

CERTIFICATE OF CONFERENCE ................... **Error! Bookmark not defined.**

TABLE OF CONTENTS .......................................................................... ii

TABLE OF AUTHORITIES ....................................................................iv

NATURE AND STAGE OF THE PROCEEDING ...................................... 1

SUMMARY OF THE ARGUMENT ......................................................... 1

ALLEGATIONS .................................................................................... 2

I.   Claims that should be dismissed under Rule 12(b)(1). ................... 7

II.  Claims that should be dismissed under Rule 12(b)(6). .................. 8

   A. Plaintiff fails to plead facts which state a Fourth Amendment claim. ....... 8

      1. Plaintiff does not allege facts which show a claim based on the reasonable force Officer Pham used. .................................................... 8

         (a) Officer Pham encountered an armed man who had committed a felony assault with a deadly weapon ............................................... 10

         (b) Savell posed a serious threat to Officer Pham when, wielding two butcher knives, Savell charged Officer Pham to within arm's reach. ........................................................................................ 10

      2. Allegations fail to overcome Officer Pham' immunity. ........................ 11

   B. Plaintiff fails to plead facts which state a Fourteenth Amendment denial of medical care claim. ................................................................ 14

III. No facts show municipal liability of the City. ............................................. 16

   A. Galveston Order 300.4 is facially constitutional and cannot serve as a basis for a *Monell* Claim. ................................................................. 16

   B. No facts show the City's policymaker is culpable for an alleged deprivation of Savell's rights. ................................................................ 18

   C. No facts show a City policy was the moving force that directly caused a deprivation of Savell's rights. ................................................................ 18

IV.  No facts show municipal liability of the police department ...................... 19

CONCLUSION .................................................................................... 20

CERTIFICATE OF SERVICE ................................................................................. 20

TABLE OF AUTHORITIES

**Federal Cases**

*Ashcroft v. al-Kidd,*
    563 U.S. 731 (2011) ...................................................................................... 13

*Babb v. Dorman,*
    33 F.3d 472 (5th Cir. 1994) ......................................................................... 12

*Backe v. LeBlanc,*
    691 F.3d 645 (5th Cir. 2012) .................................................................. 11, 12

*Balle v. Nueces Cnty.,*
    952 F.3d 552 (5th Cir. 2017) ....................................................................... 18

*Barker v. Halliburton,*
    645 F.3d 297 (5th Cir. 2011) ......................................................................... 7

*Barnes v. Felix,*
    605 U.S. 73 (2025) .................................................................................... 9, 10

*Batyukova v. Doege,*
    994 F.3d 717 (5th Cir. 2021) ....................................................................... 16

*Bell v. Wolfish,*
    441 U.S. 520 (1979) ....................................................................................... 9

*Benfer v. City of Baytown,*
    120 F.4th 1272 (5th Cir. 2024) .................................................................. 3, 9

*Brinegar v. United States,*
    338 U.S. 160 (1949) ....................................................................................... 9

*Brosseau v. Haugen,*
    543 U.S. 194 (2004) ..................................................................................... 13

*Butz v. Economou,*
    438 U.S. 478 (1978) ..................................................................................... 13

*Carmona v. City of Brownsville,*
    126 F.4th 1091 (5th Cir. 2025) ................................................................... 15

*Causey v. Sewell Cadillac-Chevrolet, Inc.,*
    394 F.3d 285 (5th Cir. 2004) ........................................................................ 3

*City and County of Los Angeles v. Mendez,*
    581 U.S. 420 (2017) ................................................................................ 11

*City and County of San Francisco v. Sheehan,*
    575 U.S. 600 (2015)................................................................................. 12

*Collins v. Morgan Stanley Dean Witter,*
    224 F.3d 496 (5th Cir. 2000)..................................................................... 3

*Connick v. Thompson,*
    560 U.S. 51 (2011).................................................................................. 16

*Coon v. Ledbetter,*
    780 F.2d 1158 (5th Cir. 1986)..................................................................... 7

*Covington v. City of Madisonville,*
    812 Fed. Appx. 219 (5th Cir. 2020)............................................................ 3

*Domino v. Tex. Dep't of Crim. Just.,*
    239 F.3d 752 (5th Cir. 2001) ................................................................... 15

*Edwards v. City of Balch Springs,*
    70 F.4th 302 (5th Cir. 2023) ............................................................... 17, 18

*Elizondo v. Green,*
    671 F.3d 506 (5th Cir. 2012) ............................................................... 13, 14

*Fraire v. City of Arlington,*
    957 F.2d 1268 (5th Cir. 1992) .................................................................. 19

*Graham v. Connor,*
    490 U.S. 386 (1989) ........................................................................ 8, 9, 10

*Groh v. Ramirez,*
    540 U.S. 551 (2004) (Kennedy, J., dissenting) ......................................... 13

*Hainze v. Richards,*
    207 F.3d 795 (5th Cir. 2000) ................................................................... 11

*Hall v. Trochessett,*
    105 F.4th 335 (5th Cir. 2024)..................................................................... 3

*Harmon v. City of Arlington, Tex.,*
    16 F.4th 1159 (5th Cir. 2021) .................................................... 3, 4, 6, 13, 14

*Heien v. North Carolina,*
  574 U.S. 54 (2014) ...................................................................................9

*Hill v. Carroll County,*
  587 F.3d 230 (5th Cir. 2009) ....................................................................9

*Jackson v. Hearne,*
  959 F.3d 194 (5th Cir. 2020)...................................................................12

*James v. Harris County,*
  577 F.3d 612 (5th Cir. 2009) ..................................................................19

*Kisela v. Hughes,*
  584 U.S. 100 (2018) ........................................................................... 13, 14

*Lewis v. Delgado,*
  163 F.4th 926 (5th Cir. 2026) ..................................................................9

*Liggins v. Duncanville,*
  52 F.4th 953 (5th Cir. 2022) ............................................................. 18, 19

*Mace v. City of Palestine,*
  333 F.3d 621 (5th Cir. 2003)................................................................. 11

*Malley v. Briggs,*
  475 U.S. 335 (1986) ................................................................................14

*Martinez v. Maverick County,*
  507 Fed. Appx. 446 (5th Cir.), *cert. denied,* 2013 U.S. LEXIS
  4806 (2013) ........................................................................................ 7, 16

*Mason v. Lafayette City-Parish Consol. Gov't,*
  806 F.3d 268 (5th Cir. 2015) ..................................................................15

*Mendoza v. Lynaugh,*
  989 F.2d 191 (5th Cir. 1985).................................................................16

*Mullenix v. Luna,*
  577 U.S. 7 (2015) (per curiam) ........................................................ 13, 14

*Ontiveros v. City of Rosenberg,*
  564 F.3d 379 (5th Cir. 2009) ................................................................ 11

*Orr v. Copeland,*
  844 F.3d 484 (5th Cir. 2016) ................................................................ 11

*Pearson v. Callahan,*
    555 U.S. 223 (2009) ................................................................................. 13

*Peña v. City of Rio Grande City,*
    879 F.3d 613 (5th Cir. 2018) ................................................................... 16

*Perdomo v. City of League City,*
    163 F.4th 921 (5th Cir. 2026) .............................................................. 8, 15

*Pineda v. City of Houston,*
    291 F.3d 325 (5th Cir. 2002) ............................................................. 16, 19

*Piotrowski v. City of Houston,*
    237 F.3d 567 (5th Cir. 2001) ............................................................. 16, 19

*Pluet v. Frasier,*
    355 F.3d 381 (5th Cir. 2004) ..................................................................... 7

*Roberts v. City of Shreveport,*
    397 F.3d 287 (5th Cir. 2005) ................................................................... 16

*Saucier v. Katz,*
    533 U.S. 194 (2001) ........................................................................... 12, 13

*Schultea v. Wood,*
    47 F.3d 1427 (5th Cir. 1995) (En Banc) ................................................. 11

*Scott v. Harris,*
    550 U.S. 372 (2007) ................................................................................... 3

*Sims v. Griffin,*
    35 F.4th 945 (5th Cir. 2022) .................................................................... 15

*Smith v. Heap,*
    31 F.4th 905 (5th Cir. 2022) ...................................................................... 9

*Snyder v. Trepagnier,*
    142 F.3d 791 (5th Cir. 1998) .................................................................... 19

*Sorenson v. Ferrie,*
    134 F.3d 325 (5th Cir. 1998) ................................................................... 12

*Spiller v. City of Texas City,*
    130 F.3d 162 (5th Cir. 1997) ............................................................. 16, 18

*Verastique v. City of Dall.*,
106 F.4th 427 (5th Cir. 2024) ................................................................. 17, 18

*Zorn v. Linton*,
146 S. Ct. 926 (2026) ................................................................................ 12, 16

## State Cases

*General Chemical Corp. v. De La Lastra*,
852 S.W.2d 916 (Tex. 1993) ............................................................................ 8

## Constitutions

Fourth Amendment ....................................................................1, 8, 9, 10, 12, 13

Fourteenth Amendment ................................................................................ 1, 14

Texas Constitution.............................................................................................. 8

## Statutes

42 U.S.C. § 1983.........................................................................................1, 7, 16

42 U.S.C. § 1988.............................................................................................7, 8

Texas Wrongful Death Act .................................................................................. 8

## Court Rules

Rule 12(b)(1) .......................................................................................................7

Rule 12(b)(6)....................................................................................................... 8

## Other Authorities

available at: https://www.galvestontx.gov/1111/Policy-
Review#docaccess-
5281d6abb833e95b11094c3ca29950cb901e48cad8b61e767be729
33a3dbf559 ..................................................................................................... 17

Galveston Order 300.4 ................................................................................. 17, 18

## NATURE AND STAGE OF THE PROCEEDING

1.      Plaintiff Kalli Savell (hereafter Plaintiff), mother of decedent Ezekial Savell (hereafter "Savell"), filed this suit under the Texas Wrongful Death statute and 42 U.S.C. §1983 asserting a Fourth Amendment excessive force claim and Fourteenth Amendment medical inattention claim against Officer Pham based on a March 2, 2024, shooting incident that led to Savell's death. Plaintiff asserts a claim of municipal liability against the City of Galveston. Defendant Officer Pham and the City of Galveston timely file their motion to dismiss because Plaintiff fails to allege factual allegations to state a plausible claim upon which relief can be granted.

## SUMMARY OF THE ARGUMENT

2.      "Mr. Savell made the fateful decision to charge out of his door toward Officer Pham, brandishing a knife. Officer Pham shot Mr. Savell six times, killing him." ECF No. 1, at ¶ 21. Taking those facts as true, no reasonable police officer would have responded differently than Officer Pham when confronted with a knife wielding person charging at that officer. Plaintiff's allegations which describe the events preceding the shooting are belied by the video recordings that Plaintiff references and makes central to his Fourth Amendment claim against Officer Pham. Even absent the video evidence, Plaintiff alleges no facts which state a plausible Fourth Amendment claim, much less facts which overcome Officer Pham's immunity. Plaintiff's conclusory assertions, that are not entitled to presumption of the truth, fair no better to state a claim of medical inattention or a claim of municipal liability against the City.

176669196.2                                      1

ALLEGATIONS

3.     On March 2, 2024, Savell, who suffers from schizophrenia, awoke to an unidentified man outside Savell's balcony trimming trees. ECF No. 1, ¶11. Savell's property manager, Brian Becker, would normally provide Savell and Savell's family notice of the presence of service workers before the service worker arrived at Savell's residence. *Id.* at ¶12. Becker did not provide advance notice of the tree service worker who arrived a day early, causing Savell to become distressed by the tree trimmer service worker's presence. *Id* at ¶13.

4.     Savell went outside Savell's residence, brandished a blade, and Savell approached one of the tree service workers and Savell struck the unidentified tree trimmer service worker on the head with the hilt of Savell's blade which caused the service worker to sustain a localized bruise or abrasion. *Id.* at ¶14. Becker called 911 and requested police assistance and Becker informed 911 dispatchers that Savell had schizophrenia and Savell brandished a knife toward a landscaper who was using a chainsaw. *Id* at ¶15, 17. By the time officers responded to the scene, Savell had retreated into Savell's home located on the second floor of the building, while other landscape workers moved across the street and emergency medical personnel treated Savell's victim for a minor head injury. ECF No. 1, ¶16. Becker informed unidentified officers on scene that Savell had schizophrenia. *Id* at ¶17.

5.     Savell contained himself inside Savell's home, with no weapons—other than knives—and Savell could be heard yelling periodically as officers positioned themselves near the entrance and exit of Savell's building as planned. *Id* at ¶¶17-

19. As planned, Officer Hendrick monitored the front of Savell's building while Officer Pham monitored the alleyway of Savell's building which contained the stairs leading to the only entrance/exit door to Savell's apartment. *Id* at ¶18. Officer Pham drew his firearm, approached and climbed Savell's stairway, and commanded Savell to exit the apartment immediately. *Id* at ¶20. In response, Savell, while brandishing a knife, charged out of the door towards Officer Pham and Officer Pham fatally shot Savell. ECF No. 1, ¶21.

### *Plaintiff references body worn camera footage in his pleadings central to his claims of excessive force.*

6.     "Where video recordings are included in the pleadings, as is the case here, the video depictions of events, viewed in the light most favorable to the plaintiff, should be adopted over the factual allegations in the complaint if the video 'blatantly contradict[s]' those allegations." *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1163 (5th Cir. 2021) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007); accord *Covington v. City of Madisonville*, 812 Fed. Appx. 219, 224 (5th Cir. 2020) (*Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004)); *Benfer v. City of Baytown*, 120 F.4th 1272, 1281 (5th Cir. 2024); *Hall v. Trochessett*, 105 F.4th 335, 339 (5th Cir. 2024). "In so doing, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins v. Morgan*

*Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000) (emphasis added). Savell refers to the body camera footage central to his claims in his complaint.[2]

7.     "Moreover, where video recordings are included in the pleadings, as is the case here, the video depictions of events, viewed in the light most favorable to the plaintiff, should be adopted over the factual allegations in the complaint if the video 'blatantly contradict[s]' those allegations." *Harmon*, 16 F.4th at 1163.

8.     Dispatch radioed officers informing them a "30 year old male…been stabbed…in the head and back…he's conscious and breathing…EMS and fire are on route…also the actor is going to be in the apartment building." Ex. 1, Ofc. Hendrick BWC at 26:13-26:35. Officer Hendrick arrived on the scene first and spoke with the property manager Brian Becker who asked Ofc. Hendrick if Hendrick needed to "talk to the tenant…the one who did the stabbing…he's schizophrenic so…I don't know if you guys need to get mental health…I just spoke to his mom so, she wanted you guys to know he's schizophrenic."  Ex. 1, at 29:48-30:20.

9.     Ofc. Hendrick contacted EMS on the scene who informed Ofc. Hendrick that "our vic[tim] says…[Savell] has at least two knives on him…and [Stavell] stabbed [victim] twice, [victim] said they were out here trimming the trees and the guy just started going nuts because he's got a pysch history apparently…they said he

---

[2] ECF No. 1, ¶17 ("The Body Worn Camera ("BWC") footage from the Galveston Police Department officers who responded to the call confirms that….); ECF No. 1, at ¶¶20-21 ("Rather than waiting, as was appropriate in the circumstances and agreed to by the officers, the BWC Shows that Officer Pham…").

retreated back into this building, they say he is on this second floor in that apartment right there. Ex. 1, 30:50-31:10. Officer Pham is seen on Officer Hendrick's BWC as EMS is informing Ofc. Hendrick and Ofc. Phan that "they said [Savell] stab anything that comes near [Savell] so just be careful." Ex. 1, 30:50-31:16. Officer Hendrick then informed Ofc. Pham that "apparently…[Savell] has at least two knives on him and [Savell] just came outside and stabbed someone…so [Savell] is probably on a manic episode." Ex. 1, at 31:16-31:30. Officer Pham and Ofc. Hendrick approached the apartment building and Savell can be heard screaming from the top story of the apartment building. Ex. 1, at 31:30-32:15. Ofc. Pham informed Ofc. Hendricks that Ofc. Pham observed Savell peek through the window and Ofc. Pham proceeded to the back of the apartment building where the only known entry/exit was located. Ex. 2, at 1:00-1:25.

10.     While Ofc. Pham was in the back of the apartment building, two other officers, Ofc. Schirard and Ofc. Bretting arrived on scene to the front of the apartment building and Ofc. Hendricks informed those officers that Savell is manic, armed with at least two knives, stabbed a victim, and that the front door is located in the back of the apartment in the alleyway. Ex. 1, at 32:16-32:48. Officer Schirard informed Ofc. Hendricks "why don't we wait on [Savell] for one second, we know where he is at," while Ofc. Schirard and Ofc. Bretting would go speak to the victim. Ex. 1, at 32:50-33:00. Ofc Phan was not present for this conversation.

Ex. 1, at 32:50-33:00; Ex. 2, at 1:00-1:25.[3] Officer Hendrick informed Ofc. Schirard and Ofc. Bretting that Ofc. Hendrick would keep watch of the front of the apartment building while Ofc. Schirard and Ofc. spoke with the victim. Ex. 1, at 32:58- 34:09. Ofc. Hendricks heard Ofc. Pham in the back of the apartment building yell and Ofc. Hendricks immediately ran towards the back of the apartment building to Ofc. Pham's location. Ex. 1, at 34:09-34:19.

11.    Ofc. Pham entered the back of Savell's apartment building which had access to at least three neighboring apartment units including one unit only a few steps away from Savell's front door. Ex. 2, at 1:20- 2:04. Ofc. Pham slowly approached the second-floor entrance of Savell's apartment when Savell is screaming. from inside his apartment, and Ofc. Pham informed dispatch of Ofc. Pham's location outside apartment no. 4. Ex. 2, at 2:15-2:25. Savell continued to scream and Ofc. Pham, with his service pistol drawn, announced Ofc. Pham's presence as Galveston Police and Ofc. Pham commanded the unit's occupant, later identified as Savell, to come out with his hands up. 2:30-2:46.

12.    Savell quickly opened the door, continued to scream irately, and Savell with two large butcher knives, one in each hand, charged at Ofc. Pham coming within a foot from Officer Pham. Ex. 2, 2:40-2:49. Officer Pham commanded Savell to drop

---

[3] *Compare* Plaintiff's pleading allegations at ECF No. 1, at ¶18, "The officers agreed on a plan to contain Mr. Savell in his upstairs apartment until help could arrive in the form of backup, mental health support, and /or Mr. Savell's mother...According to the plan that the Galveston Police Department officers discussed and agreed upon..." but "the video 'blatantly contradict[s]' those allegations.'" *Harmon*, 16 F.4th at 1163.

the knife, but Savell continued his charge at Ofc. Pham. Ex. 2, at 2:47-2:49. Officer Pham made the split-second decision to fire at Savell who continued to charge at Ofc. Pham, while Savell carried two knives, as Ofc. Pham attempted to back away on the descending staircase. Ex. 2, at 2:48-2:55. Seconds after shooting, Ofc. Pham radioed dispatch "I need EMS…I've got a 25 year old male with multiple shots." Ex. 2, at 3:15-3:30. Ofc. Pham and Ofc. Hendrick ascended the stairs and disarmed Savell who was still clutching one butcher knife in each hand. Ex. 2, at 4:00-4:50. Once Savell was disarmed, Ofc. Pham and EMS began medical treatment. Ex. 2, at 4:51-4:55. Approximately three minutes and seven seconds elapsed from the time of the first shot, Ex. 2, at 2:48, to the time Ofc. Pham and EMS began medical treatment on Savell at Ex. 2, at 4:55.

## I.    Claims that should be dismissed under Rule 12(b)(1).

13.    Plaintiff Kalli Savell, "like all persons who claim a deprivation of constitutional rights, were required to prove some violation of their personal rights." *Coon v. Ledbetter*, 780 F.2d 1158, 1160-61 (5th Cir. 1986). Absent authority through 42 U.S.C. § 1988, a relative of an individual whose federal rights were violated lacks standing to prosecute a claim based on a deprivation of an adult family member's rights. *Barker v. Halliburton*, 645 F.3d 297, 300 (5th Cir. 2011); *Martinez v. Maverick County*, 507 Fed. Appx. 446, 448 n.1 (5th Cir.), *cert. denied*, 2013 U.S. LEXIS 4806 (2013). To satisfy the narrow exception to that general legal principle, "a party must have standing under the state wrongful death or survival statutes to bring a claim under 42 U.S.C. § 1983 and § 1988." *Pluet v. Frasier*, 355

F.3d 381, 383 (5th Cir. 2004). Therefore, other than claims asserted through Texas under 42 U.S.C. § 1988 through Texas Wrongful Death and Survival Statutes, Plaintiff lacks standing and capacity to prosecute a claim.

14.     Moreover, Plaintiff lacks standing and capacity to recover punitive damages through the Texas Wrongful Death Statute. In the circumstances Texas law otherwise permits, "parents of the deceased, while they are entitled to maintain an action under the Wrongful Death Act statute, are not included in [Tex. Const.] art. 16 § 26 and are therefore unable to recover punitive damages." *General Chemical Corp. v. De La Lastra*, 852 S.W.2d 916, 923 (Tex. 1993). Therefore, Plaintiff lacks standing or capacity to recover exemplary damages under state or federal law through the Texas Wrongful Death Act.

## II.     Claims that should be dismissed under Rule 12(b)(6).

### A.     Plaintiff fails to plead facts which state a Fourth Amendment claim.

#### 1.     Plaintiff does not allege facts which show a claim based on the reasonable force Officer Pham used.

15.     In *Graham v. Connor*, 490 U.S. 386, 388, 395 (1989), the Supreme Court identified the standard governing claims of excessive force during a seizure. "[S]uch claims are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Id*. "Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id*. at 396. An officer is not responsible for consequences of necessary force.

176669196.2                                    8

*Compare*, *Perdomo v. City of League City*, 163 F.4th 921, 922-23 (5th Cir. 2026); and *Lewis v. Delgado*, 163 F.4th 926 (5th Cir. 2026); *Hill v. Carroll County*, 587 F.3d 230, 237 (5th Cir. 2009).

16.    "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of the government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" *Heien v. North Carolina*, 574 U.S. 54, 60-61 (2014) (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)). "Because '[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, *Bell v. Wolfish*, 441 U.S. 520, 559 (1979), however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

17.    "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight." *Id.*; *accord Benfer*, 120 F.4th at 1282; *Smith v. Heap*, 31 F.4th 905, 912 (5th Cir. 2022). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396-397. "That inquiry into the reasonableness of police force requires analyzing the 'totality of the

176669196.2                                    9

circumstances.'" *Barnes v. Felix*, 605 U.S. 73, 80 (2025). "Or said more prosaically, deciding whether a use of force was objectively reasonable demands 'careful attention to the facts and circumstances' relating to the incident, as then known to the officer." *Barnes*, 605 U.S. at 80 (quoting *Graham*, 490 U.S. at 396).

> **(a)** **Officer Pham encountered an armed man who had already committed a felony assault with a deadly weapon.**

18.    "Because '[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application,' however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue." *Graham*, 490 U.S. at 396. Savell's criminal assault with a Deadly Weapon, a felony under Tex. Penal Code. §22.03, prompted the officers' response to the scene after Savell used a knife during the commission of an assault on the landscape worker. ECF No. 1, at ¶14. EMS relayed information to Officer Hendrick and Officer Pham showed the threat continued as "[Savell] has at least two knives on him…and [Savell] stabbed [victim] twice, Ex. 1, 30:50-31:10, and the EMS further warned Officer Pham and Officer Hendrick that "they said [Savell will] stab anything that comes near [Savell] so just be careful." Ex. 1, 30:50-31:16.

> **(b)** **Savell posed a serious threat to Officer Pham when, wielding two butcher knives, Savell charged Officer Pham to within an arm's reach.**

19.    "An officer's use of deadly force is presumptively reasonable when the officer has reason to believe that the suspect poses a threat of serious harm to the officer

or to others." *Orr v. Copeland*, 844 F.3d 484, 493 (5th Cir. 2016) (quoting *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009)).

20.    Analysis of the facts, including Ex. 2, at 0:01-3:30, from the relevant perspective of a reasonable officer on the scene, show that an objective officer could reasonably have believed shooting Savell was necessary to stop the serious risk of harm Savell's actions precipitated. *See id.*; *also City and County of Los Angeles v. Mendez*, 581 U.S. 420, 428 (2017) (expressly rejecting a provocation rule that Plaintiff's claims hinge on); *Mace v. City of Palestine*, 333 F.3d 621, 625 (5th Cir. 2003) ("It is not objectively unreasonable for an officer in that situation to believe that there was a serious danger to himself and the other officers present." when faced with an intoxicated, violent and uncooperative individual who was wielding a sword within eight to ten feet of several officers in a relatively confined space); and *Hainze v. Richards*, 207 F.3d 795,  (5th Cir. 2000) (regardless of whether the reason for the Savell's life-threatening conduct was a mental health disorder).

### 2.    Allegations fail to overcome Officer Pham' immunity.

21.    To state a claim that overcomes qualified immunity, Plaintiffs are required to "plead more than conclusions" and allege facts that overcome immunity. *See Schultea v. Wood*, 47 F.3d 1427, 1430-34 (5th Cir. 1995) (En Banc). "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). "[T]he complaint must state

with factual detail and particularity the basis for the claim which necessarily includes why [Officer Pham] cannot successfully maintain the defense of immunity." *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994) (emphasis added); *accord Jackson v. Hearne*, 959 F.3d 194, 201 (5th Cir. 2020).

22.     Plaintiff fails to plead facts which plausibly show that Savell's conduct was clearly lawful, *Sorenson v. Ferrie*, 134 F.3d 325, 329-30 (5th Cir. 1998), and that every police officer would have known beyond doubt that the actions of Officer Pham were clearly unconstitutional. *See Backe supra.*[4] "In short, officers receive qualified immunity unless they could have 'read' the relevant precedent beforehand and 'know[ n]' that it proscribed their specific conduct." *Zorn v. Linton*, 146 S. Ct. 926, 930 (2026) (citing *City and County of San Francisco v. Sheehan*, 575 U.S. 600, 616 (2015)).

23.     Under the Fourth Amendment standard, [i]f an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed. *Saucier v. Katz*, 533 U.S. 194, 205 (2001).

> The qualified immunity inquiry, on the other hand, has a further dimension. The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law

---

[4]     Defendants address immunity in further detail throughout the motion as to each claim.

requires is reasonable, however, the officer is entitled to the immunity defense.

*Id.*

24.     "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting) (quoting *Butz v. Economou*, 438 U.S. 478, 507 (1978)).

25.     Regardless of whether allegations show Officer Pham violated the Fourth Amendment, Plaintiffs' allegations fail to show that Officer Pham violated clearly established law. *See Kisela v. Hughes*, 584 U.S. 100, 103 (2018); *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012). "The burden is heavy: A right is 'clearly established' only if preexisting precedent 'ha[s] placed the … constitutional question beyond debate.'" *Harmon*, 15 F.4th at 1165-66. "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (emphasis in original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)); *see also Brosseau v. Haugen*, 543 U.S. 194, 199-201 (2004).

26.     "The specificity requirement assumes a special significance in excessive force cases, where officers must make split-second decisions to use force." *Harmon*, 15 F.4th at 1166. "The results depend 'very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing

precedent 'squarely governs' the specific facts at issue." *Kisela*, 584 U.S. at 104-105 (quoting *Mullenix*, 577 U.S. at 13)).

27.     Obvious excessive force is "so rare that the Supreme Court has *never* identified one in the context of excessive force." *Harmon*, 15 F.4th at 1167. "Because the plaintiff must point to a case almost squarely on point, qualified immunity will protect 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Cases in the Fifth Circuit suggest the opposite.

28.     Like in the case at bar, *Green,* 671 F.3d at 510, the plaintiffs argued Officer Green used objectively unreasonable force when Officer Green shot Ruddy Elizondo who had a history of suicide attempts, locked himself in his room and "ignored repeated instructions [from Officer Green] to put down the knife [Elizondo] was holding and seemed intent on provoking Green." *Id.* at 510.  The Fifth Circuit in *Green* held that Officer Green was entitled to qualified immunity because "at the time Green discharged his weapon, [Elizondo] was hostile, armed with a knife, in close proximity to Green, and moving closer. Considering the totality of the circumstances in which Green found himself, it was reasonable for him to conclude that [Elizondo] posed a threat of serious harm." *Id.*

> **B.     Plaintiff fails to plead facts which state a Fourteenth Amendment denial of medical care claim.**

29.     "Where the claimed constitutional violation involves the Fourteenth Amendment right to medical care, Plaintiff must allege facts, which, if proved, would show Officers exhibited deliberate indifference to [Plaintiff's] serious

176669196.2                                    14

medical needs." *Carmona v. City of Brownsville*, 126 F.4th 1091, 1096-97 (5th Cir. 2025) (citing *Sims v. Griffin*, 35 F.4th 945, 949 (5th Cir. 2022)). "Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). To show deliberate indifference after a shooting incident, "[a] plaintiff 'must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Mason v. Lafayette City-Parish Consol. Gov't*, 806 F.3d 268, 279 (5th Cir. 2015).

30.     Plaintiff alleges no facts which remotely describe the three-minute period at issue [Ex. 2, at 2:48-4:55] between the shooting and EMS providing care to Savell could evidence deliberate indifference, much less overcome Officer Pham's immunity for this claim [ECF No. 1, at ¶¶35-43]. *See Perdomo*, 163 F.4th at 925-26; *Krupar v. Bradshaw*; Cause No. 3:21-cv-137, Doc. No. 29, in the Southern District of Texas, Galveston Division (S.D. Tex. November 14, 2022) (Brown, Jeffrey Vincent, District Judge presiding).

31.     When as here, ECF No. 1, at ¶41, "[i]f the plaintiff relies on *delay* as the basis of the claim, then the plaintiff must show that the delay '*results in substantial harm*'" and Plaintiff fails to allege facts which show any delay in treatment much less that the unidentified delay resulted in substantial harm. Compare, *Batyukova v. Doege*, 994 F.3d 717, 732 (5th Cir. 2021); *Mendoza v. Lynaugh*, 989 F.2d 191,

195 (5th Cir. 1985); *Martinez*, 507 Fed. Appx. 446 at 448. Certainly, Plaintiff fails to allege facts which overcome Officer Pham's immunity. *Zorn*, 146 S. Ct. at 930.

### III. No facts show municipal liability of the City.

32. "[U]nder § 1983, local governments are responsible only for 'their own illegal acts.'" *Connick v. Thompson*, 560 U.S. 51, 60 (2011). The Constitution provides protections from a governmental agency causing a deprivation but does not require a governmental entity to enact a transcendent policy that prevents excessive force. *See Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005); *Pineda v. City of Houston*, 291 F.3d 325, 333 (5th Cir. 2002). To state a claim against the City, Plaintiff must "plead facts that support each element of § 1983 [governmental] liability." *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018). Plaintiffs' "description of a [City] policy or custom and its relationship to [a factually supported] underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997). Plaintiffs fail to allege facts which show any unconstitutional City of Galveston policy was the moving force that directly caused a deprivation of Savell's or any Plaintiff's rights. The City and Officer Pham are entitled to insist Plaintiff identify a policy that Plaintiff claims caused a deprivation of Savell's rights. *See Piotrowski v. City of Houston,* 237 F.3d 567, 576, 578-79 (5th Cir. 2001).

> **A. Galveston Order 300.4 is facially constitutional and cannot serve as a basis for a *Monell* Claim.**

33.     While ultimately unclear, Plaintiff seems to assert that Galveston Order 300.4, might somehow permit officers to disregard the totality of the circumstances when determining whether to use deadly force, but Plaintiff does not allege facts plausibly showing the Order directly causes officers to disregard the totality of the circumstances, so the Order is certainly not facially unconstitutional, as Plaintiff posits. ECF No. 1, at ¶57. "For purposes of a *Monell* claim, an official, written policy is facially unconstitutional if it 'affirmatively allows or compels unconstitutional conduct.'" *Verastique v. City of Dall.*, 106 F.4th 427, 435 (5th Cir. 2024) (citing *Edwards v. City of Balch Springs*, 70 F.4th 302, 309 (5th Cir. 2023)). Galveston Order 300.4, which Plaintiff references and makes central to his *Monell* claim, ECF No. 1, at ¶¶55-62, does neither[5].

34.     "An official policy that merely (1) 'commits some decisions to an individual officer's on-the-scene discretion' or (2) 'gives some detailed instructions while omitting others' does not 'affirmatively allow[] or compel[]' unconstitutional conduct.'" *Id.* Fatal to this claim, Plaintiff's allegations confirm the lawful discretion afforded to Galveston officers through Galveston Order 300.4, which "in no way abrogates the applicability or effectiveness of pre-existing constitutional protections." *Verastique*, 106 F.4th at 435; *see also* Galveston Order 300.4.

---

[5] The Court may further take judicial notice of Galveston Order 300.4 under Fed. R. 201, as the Galveston Police Department Manual, which contains that order, is publicly available and can be accurately and readily determined from sources whose accuracy cannot be reasonably be questioned. Galveston Order 300.4 is available at: https://www.galvestontx.gov/1111/Policy-Review#docaccess-5281d6abb833e95b11094c3ca29950cb901e48cad8b61e767be72933a3dbf559

35.    Galveston Order 300.4 does "not prohibit[] [officers] from exercising the Order's grants of discretion in a constitutionally valid manner. Nor [does Galveston Order 300.4] require[] [officers] to disregard restrictions or limitations not expressly mentioned in the text of the Order itself." And Plaintiff does not allege facts which show Galveston Order 300.4 "stem from the policymaker's deliberate indifference." *See Edwards*, 70 F.4th at 309.

**B.    No facts show the City's policymaker is culpable for an alleged deprivation of Savell's rights.**

36.    "[Governmental] liability must be predicated upon a showing of 'fault,' not merely 'responsibility.'" *Spiller*, 130 F.3d at 167. In support of their complaint, Plaintiffs attached the facially constitutional Smith County *Use of Force Policy* [Doc. 155-26], and do not allege facts showing the County policy is facially unconstitutional. *See Edwards*, 70 F.4th at 308-12. A "facially innocuous policy will support liability" only if "it was promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result." *Id.* at 308 (quoting *Balle v. Nueces Cnty.*, 952 F.3d 552, 558 (5th Cir. 2017) (internal quotation marks and citation omitted)). "Deliberate indifference is a 'high standard' that requires 'a complete disregard of the risk that a violation of a particular constitutional right would follow the decision.'" *Id.* at 312 (quoting *Liggins v. Duncanville*, 52 F.4th 953, 956 (5th Cir. 2022)). No fact shows deliberate indifference.

**C.    No facts show a City policy was the moving force that directly caused a deprivation of Savell's rights.**

37.    "In addition to culpability, there must be a direct causal link between [each alleged governmental] policy and the constitutional deprivation." *Piotrowski*, 237 F.3d at 579. It is crucial the requirements of governmental culpability and governmental causation "not be diluted, for '[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability." *Piotrowski*, 237 F.3d at 579 (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)). In addition to failing to plead facts showing deliberate indifference, Plaintiff's claims fail to show a plausible claim under the moving force causation element of the controlling legal test.

38.    There is no factual allegation which plausibly shows a direct causal connection directly linking Officer Pham's shooting of the Savell to any City policy. *Compare Piotrowski*, 237 F.3d at 576, 578-81; *Pineda*, 291 F.3d at 334; *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992). Not only has Plaintiff failed to show any, much less every, unconstitutional policy, Plaintiff also fails to allege facts showing any policy caused a deprivation of Savell's rights. *See Id.*; *Liggins*, 52 F.4th at 955-57; *James v. Harris County*, 577 F.3d 612, 618-619 (5th Cir. 2009).

## IV.    No facts show municipal liability of the police department.

39.    No allegation shows the Galveston police department has a jural existence separate from the City of Galveston that could subject the department to suit, *Darby*, 939 F.2d at 313, but nonetheless claims against the police department would fail for the same reasons the direct claims against the City fail. *See* § III *supra*.

176669196.2                                    19

CONCLUSION

40.    For these reasons, the Court should grant this motion and dismiss the suit.

Respectfully submitted,

LEWIS BRISBOIS BISGAARD & SMITH,
LLP
By: /s/ Norman Ray Giles
    William S. Helfand
    Attorney-in-charge
    Texas Bar No. 09388250
    S.D. Tex. No. 8791
    bill.helfand@lewisbrisbois.com
    Norman Ray Giles
    Texas Bar No. 24014084
    S.D. Tex. No. 26966
    Norman.Giles@lewisbrisbois.com
    Randy Edward Lopez
    Texas Bar No. 24091829
    S.D. Tex. No. 3369137
    Randy.Lopez@lewisbrisbois.com
    24 Greenway Plaza, Suite 1400
    Houston, Texas 77046
    Telephone: (832) 460-4637
    Facsimile: (713) 759-6830

*Attorneys for Defendants*

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded to all parties and counsel of record, in accordance with the District's ECF service rules on May 18, 2026.

Holt Major Lackey
HOLT MAJOR LACKEY, PLLC
111 W. Anderson Ln., Ste. D-211
Austin, TX 78752
holt@holtmajorlackey.com

/s/ *Norman Ray Giles*
Norman Ray Giles

176669196.2                                      20